The **WILDERNESS SOCIETY** et al. (David Anderson and The Canadian Wildlife Federation), Appellants,

v.

**Rogers C. B. MORTON,** Secretary of the Interior, et al.

No. 72–1090.

United States Court of Appeals, District of Columbia Circuit.

Argued April 13, 1972.

Decided May 11, 1972.

Mr. Edward Berlin, Washington, D. C., for appellants.

Mr. Edmund B. Clark, Atty., Dept. of Justice, with whom Messrs. Herbert Pittle and Robert S. Lynch, Attys., Dept. of Justice, were on the brief, for appellee Morton.

Mr. Robert E. Jordan, III, Washington, D. C., with whom Messrs. Paul F. Mickey, John E. Nolan, Jr. and Quinn O'Connell, Washington, D. C., were on the brief, for appellee Alyeska Pipeline Service Co. Mr. Richard H. Porter, Washington, D. C., also entered an appearance for appellee Alyeska Pipeline Service Co.

Messrs. Dennis M. Flannery, Charles R. Halpern, John F. Dienelt, Washington, D. C., James W. Moorman, San Francisco, Cal., and Victor H. Kramer, Washington, D. C., were on the brief for appellees Wilderness Society and others.

Before WRIGHT and TAMM, Circuit Judges, and FRANK A. KAUFMAN,\* United States District Judge for the District of Maryland.

PER CURIAM:

The question presented by this appeal is whether the District Court properly denied an application of a nonresident Canadian citizen and a Canadian environmental organization to intervene in litigation aimed at testing whether the Secretary of the Interior has complied with the procedures of the National Environmental Policy Act [1] prior to deciding whether to issue a permit for the trans-Alaska pipeline. In the basic action various domestic environmental groups seek an injunction preventing the Secretary of the Interior from issuing a permit for the trans-Alaska pipeline until the Secretary properly complies with the procedures required by NEPA. A preliminary injunction was granted by the District Court, and the litigation is now dormant pending further action by the Secretary in preparing and circulating an impact statement to support the

---

\* Sitting by designation pursuant to 28 U.S.C. § 292(c) (1970).

1. 42 U.S.C. § 4321 *et seq.* (1970).

pipeline project as required by the Act. *See* Calvert Cliffs' Coordinating Committee v. U. S. Atomic Energy Com'n, 146 U.S.App.D.C. 33, 449 F.2d 1109 (1971). Hence there is no suggestion that permitting appellants' intervention will in any way delay the litigation.

The District Court denied the application for intervention, stating: "It is the Court's view that counsel for the plaintiff in this case are extraordinarily able and that if the American environment is protected, Canadian environment must, of necessity, be protected." Since no question is raised as to the professional competence of plaintiffs' counsel, the only issue on appeal is whether the applicants for intervention have interests that may be antagonistic to the interests of plaintiffs which would make their representation by plaintiffs' counsel inadequate under Rule 24(a), Fed.R.Civ. P.[2]

Section 102(C) of the Act, 42 U.S.C. § 4332(C), requires that responsible officials of all agencies prepare a "detailed statement" covering the impact of particular actions on the environment, the environmental costs which might be avoided, and alternative measures which might alter the cost-benefit equation. Section 102(D) requires all agencies specifically to "study, develop, and describe appropriate alternatives to recommended courses of action in any proposal which involves unresolved conflicts concerning alternative uses of available resources." Whether the Secretary complies with these procedural requirements of NEPA, particularly with respect to the impact statement, is a question which will be decided in this litigation.

The Secretary has not yet issued his impact statement or his order and, consequently, no one can tell at this stage which of the alternative routes for shipping the oil to the United States the Secretary will choose in exercising his responsibilities under NEPA. Whether the Alaskan oil should be shipped by pipeline across Canada to the United States or, as originally proposed by the Secretary, across Alaska to the Alaskan port of Valdez and then south by supertanker to a refinery in the United States such as the Cherry Point refinery north of Seattle and 12 miles south of the Canadian border are possible alternatives which will doubtless divide the environmentalists, Canadian from American. To approach the Cherry Point refinery, the tankers would have to weave their way through the San Juan Islands in the Juan de Fuca Straits and Puget Sound. Appellants argue that if Cherry Point is selected as the refinery for most or all of the Alaskan oil it may be reasonably anticipated that at least one supertanker a year carrying 800,000 tons of crude oil may be expected to run aground and spill oil in the Straits and thereby threaten the 20-million-dollar fishing industry of British Columbia, its 200-million-dollar logging industry, its $500,000 seal fishing industry, and its one-billion-dollar investment in shoreline recreation property along the inland Straits. Appellants also suggest that their interests will obviously be antagonistic to the interests of the existing parties in the event a trans-Canada pipeline is considered.

We are persuaded that while, as the District Court found, counsel for the plaintiffs in this case are extraordinarily able, it does not follow necessarily that their clients' interests are identical to those of appellants. A mere recitation of appellants' contentions, plus a look at the map, makes it quite clear that the interests of the United States and Cana-

---

2. Interestingly, the pipeline appellee, but not the Government, asserts that claims of the kind asserted by appellants, when made by non-United States citizens, are non-justiciable under the doctrine of separation of powers. We find the contention without merit. Appellants, along with the other parties to this litigation, are appearing before the Secretary in the administrative proceedings in this matter. No reason appears why they should not be allowed to participate with the other parties in the judicial review of those proceedings.

dian environmental groups are sufficiently antagonistic in this litigation to require granting of the application for intervention. Nuesse v. Camp, 128 U.S. App.D.C. 172, 180–182, 385 F.2d 694, 702–704 (1967).

Reversed.[3]

TAMM, Circuit Judge (concurring):

I concur in the result the court reaches today. I do so because the particular context in which this case arises mandates, in my view, such a conclusion. As the court points out, appellants' interests may well diverge from those of the existing parties and therefore merit consideration. I see no problem with regard to separation of powers or interference with the conduct of foreign relations in the narrow questions presented here, nor do I think appellants' status bars intervention.[1] However, I, nonetheless, feel constrained to vocalize a gnawing concern and uneasiness about a discernably fashionable trend in the judiciary today. The trend is toward justification of intervention upon incantation of the phrase "it won't do any harm." I respectfully submit that painting with such broad amorphous strokes absent an analysis of the hues and textures employed can only lead to a collage-cluttered canvas sans symmetry or perspective. Granted intervention is a useful tool, but it is a tool which must be used carefully. We are presently in the day of the multi-party class action suit where trial judges are often hard-pressed to narrow issues and parties. These judges valiantly strive to prevent a lawsuit from becoming unwieldy; we should be similarly wary, lest the manageable lawsuit become an unmanageable cowlick.

---

3. The District Court should consider the effect of the Supreme Court's opinion in Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), on appellants' application for intervention. In particular, if necessary, appellants should be permitted to amend their pleadings. *See id.*, n. 8.

1. *Cf.* Constructores Civiles de Centroamerica, S. A. v. Hannah, 148 U.S.App. D.C. 159, 459 F.2d 1183 (1972). For a recent discussion of standing in environmental law see Comment, Standing and Sovereign Immunity: Hurdles for Environmental Litigants, 12 Santa Clara Lawyer 123 (1972).