[No. 1035-2.    Division Two.    April 6, 1973.]

WILLIAM J. FRITZ *et al., Respondents,* v. SLADE GORTON, *Attorney General, et al., Respondents,* LEAGUE OF WOMEN VOTERS OF WASHINGTON, *Petitioner.*

*Stimson Bullitt* (of *Riddell, Williams, Voorhees, Ivie & Bullitt*), for petitioner.

*Slade Gorton, Attorney General, Malachy R. Murphy* and *Rodney Carrier, Assistants,* and *Richard Derham* (of *Davis, Wright, Todd, Riese & Jones*), for respondents.

PEARSON, C.J.—The League of Women Voters of Washington has petitioned this court for a writ of certiorari to review an order of the superior court entered on March 9, 1973 which both denied the League's motion to intervene as a party defendant under CR 24, and granted the League permission to appear as an amicus curiae. The Attorney General took no position on the League's motion before the trial court and similarly takes no position with respect to this petition. Following a preliminary hearing on March 29,

1973, required by CAROA 57(f), this court heard full argument on the petition at a special hearing on April 3, 1973. At that time, we orally granted the writ and reversed the trial court's order, subject to the condition that intervenor waive its right to seek a continuance of the trial now scheduled for April 23, 1973.

Petitioner argues that its motion to intervene should have been granted either as a matter of right under CR 24(a)[1] or as a matter of discretion under CR 24(b). In our view, the question must be decided under CR 24(a). In fact, were we required to pass on the petition solely under the permissive intervention rule, we could not find an abuse of discretion on the record before us. However, we think the League has established its right to intervene under subsection (a) of rule 24, and on that basis reverse the trial court. Petitioner has shown a sufficient interest, divergent from the interest of the Attorney General, in performing his statutory duties, that may be inadequately represented by the existing parties and will be affected by the outcome of this case.

■ We do not consider this a typical case of intervention in the sense that a strict definition of the term "interest" should be used. The merits of this controversy involve a conflict between financial disclosure by those involved in representative government and broad personal liberties, including that pervasive bundle of rights denominated "the right of privacy." The implications of the decision on the merits not only will have broad ramifications on individual rights, but also will touch the very heart of the legislative process. Moreover, the case may well furnish a precedent to other jurisdictions. Under these circumstances, we think

[1] CR 24(a) provides: "Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

the term "interest" should be broadly, rather than narrowly, construed, so that the issues of fact and law may be framed and tried in the clearest possible light. *See American Discount Corp. v. Saratoga West, Inc.*, 81 Wn.2d 34, 499 P.2d 869 (1972). We are also influenced by the trend of recent decisions in other jurisdictions toward liberalizing the requirements for intervention in favor of third-party practice. *Mullinix v. Pontiac*, 16 Mich. App. 110, 167 N.W.2d 856 (1969); *see Trbovich v. United Mine Workers*, 404 U.S. 528, 30 L. Ed. 2d 686, 92 S. Ct. 630 (1972).

Even though we adopt a broad approach to the question of whether petitioner has a sufficient interest to justify intervention, we wish to make clear that by so doing we do not intend to "water down" the requirement to the point of eliminating it in the practical sense. Were the interest of petitioner solely based on its status as an "ordinary citizen" or "taxpayer," we would have no difficulty in dismissing this petition. There are, however, two reasons which both support petitioner's claim of an interest and establish the divergence of petitioner's position from that of the Attorney General. First, the statute under attack explicitly recognizes that action by the Attorney General may be inadequate to fully implement the act's purpose.[2] Provision is

---

[2]Initiative 276, section 40(4) provides: "Any person who has notified the attorney general in writing that there is reason to believe that some provision of this act is being or has been violated may himself bring in the name of the state any of the actions (hereinafter referred to as a citizen's action) authorized under this act if the attorney general has failed to commence an action hereunder within forty days after such notice and if the attorney general has failed to commence an action within ten days after a notice in writing delivered to the attorney general advising him that a citizen's action will be brought if the attorney general does not bring an action. If the person who brings the citizen's action prevails, he shall be entitled to one-half of any judgment awarded, and to the extent the costs and attorney's fees he has incurred exceed his share of the judgment, he shall be entitled to be reimbursed for such costs and fees by the State of Washington: PROVIDED, that in the case of a citizen's action which is dismissed and which the court also finds was brought without reasonable cause, the court may order the person commencing the action to pay all costs of trial and reasonable attorney's fees incurred by the defendant."

made whereby "any citizen," after notice and opportunity to commence the requested action is given to the Attorney General, may institute suit under the statute. While we do not question the integrity or sincerity of the Attorney General when he says that he will defend *every interest* of the people of this state, his assertion that he is capable of so doing is not entirely in harmony with the statute itself.

During oral argument, respondent argued that since the Attorney General must be given notice and opportunity before a private suit may be started, the statute recognizes the similarity of interest between the Attorney General and the "private citizen enforcer." No doubt this is true to a considerable degree. The point is, however, that the "private enforcer" and the Attorney General may not agree. In that event, the statute provides that the private enforcer may litigate his claim. It is this aspect of the statute that furnishes the petitioner with an interest sufficient to warrant intervention.

Petitioner's relationship with this litigation springs from its concern for the policy expressed in the act. The League was a significant force in drafting Initiative 276, getting it placed on the ballot, and campaigning for its adoption. Because of this connection with the statute from its inception, the League is at least in as good a position and probably in a better position than any other private citizen to represent whatever divergence exists between the Attorney General and the "private enforcer" recognized by the act.

Secondly, we do not overlook the fact that the League is a lobbyist. In this role, petitioner not only is subject to certain provisions of the statute, but also may be expected to use the act aggressively in furthering its' legislative objectives. We are satisfied that such a lobbyist has an interest divergent from that represented by the Attorney General.

Once petitioner has shown that it has a divergent interest, petitioner must then establish that the interest may be inadequately represented by existing parties. CR 24(a); *Mullinix v. Pontiac, supra.* The burden of making

that showing should be treated as minimal. *Trbovich v. United Mine Workers, supra.* In our view, petitioner has met its burden. Absent intervention, the Attorney General would be called upon to defend the public's interest in the policy of the act, as well as the interest of a lobbyist and potential "private enforcer." Even though we assume that the Attorney General will perform his duties exceptionally well, the League might still have a valid complaint about his performance, based on the divergence of interest. *See Wilderness Soc'y v. Morton,* 463 F.2d 1261 (D.C. Cir. 1972). Serving two masters is difficult even under the best of circumstances, and in our view intervention is an appropriate remedy where such a situation exists.

Finally, petitioner must show that the outcome of this case will affect its interest. From what we have said above, the effect of the litigation on the League's interest is obvious, and the League should prevail on this issue.

Even though we think intervention as a matter of right is proper, we are concerned that this lawsuit not become unmanageable and that it proceed expeditiously. Because of the impact of disclosure requirements on candidates in the general election, lobbyists and public officials, we think that public policy demands that this case be tried as quickly as possible.

Accordingly, the writ is granted and the League is allowed to intervene on the condition that any right to seek a continuance of the trial is waived. It is our intent that this decision be final upon the filing of this opinion, and that the superior court proceed to trial as promptly as possible.

PETRIE and ARMSTRONG, JJ., concur.