[No. 62306-6. En Banc. October 12, 1995.]

VASHON ISLAND COMMITTEE FOR SELF-GOVERNMENT, ET AL., *Appellants,* v. WASHINGTON STATE BOUNDARY REVIEW BOARD FOR KING COUNTY, ET AL., *Respondents.*

760

*David J.W. Hackett*, for appellants.

*Robert C. Kaufman, Laura B. Wishik*, and *Robert D. Tobin*, for respondents.

ALEXANDER, J. — We granted review of an order of the King County Superior Court denying an application for a writ of mandamus ordering the Boundary Review Board of the State of Washington for King County (Board) to

"review" a notice of intent to incorporate all of Vashon and Maury Islands as a city. (Clerk's Papers at 2). We affirm the trial court, concluding that it did not err in denying the application for the writ on the basis that under a 1994 amendment to RCW 36.93.150, a statute that sets forth the actions the Board may take after reviewing "proposed actions," the Board could not approve the incorporation because all of the land within the proposed city was located outside of the designated urban growth areas of King County.

In 1994, a resident of Vashon Island, Carol Campbell, chaired a nonprofit organization known as the Vashon Island Committee for Self-Government (Committee). Under Campbell's leadership, the Committee circulated a petition in support of the incorporation of Vashon and Maury Islands (Vashon), an island located entirely within the nonurban growth area of King County.[1] Four hundred forty-eight of the approximately 10,000 residents of the island signed the petition. The Committee then filed the petition with the King County Auditor. The Records and Elections Division of that office determined that the number of signatures on the petition exceeded the number required to certify the petition.[2]

In a letter dated March 22, 1994, the Committee, as it was required to do, informed the Board that it intended to

---

[1]The area referred to as Vashon and Maury Islands is a single thirty-seven-square-mile island that is totally surrounded by waters of Puget Sound.

[2]RCW 35.02.035 provides, in part: "**Petition—Auditor's duties.** The county auditor shall within thirty days from the time of receiving said petition determine if the petition contains a sufficient number of valid signatures. . . . If the petition is certified as having sufficient valid signatures, the county auditor shall transmit said petition, accompanied by the certificate of sufficiency, to the county legislative authority or authorities of the county or counties within which the proposed city or town is located."

RCW 35.02.020 provides, in part: "A petition for incorporation must be signed by registered voters resident within the limits of the proposed city or town equal in number to at least ten percent of the number of voters residing within the proposed city or town . . . ."

incorporate Vashon as a Non-Charter Code City.[3] The Board responded to the Committee by letter, indicating:

> The Notice of Intention transmitted to this office is now complete and has been officially filed effective **March 23, 1994**. Therefore, the end of the forty-five day period for invoking the Board's jurisdiction and requiring a public hearing is now officially **May 7, 1994**. You will be kept advised of all transactions affecting this action.

(Clerk's Papers at 32; Br. of Appellant at 4.)

On May 2, 1994, the King County Council passed a motion requesting that the Board review the proposal for incorporation of Vashon Island as a city. The Council did not, however, provide any funds for such a review. Eventually, the Attorney General and the Board's own attorney advised a member of the King County Council, Greg Nickels, that incorporation of Vashon as a city was legally prohibited because all of the territory in the proposed city was "outside of the County's adopted Urban Growth Area." (Clerk's Papers at 39.) Nickels was also informed that the Board had "declined to act on the proposed Vashon incorporation unless and until the County funds a pre-incorporation feasibility study." (Clerk's Papers at 39.)

On August 9, 1994, Councilmember Nickels sent a letter to the Board, requesting that it "immediately determine and issue a formal decision upon the legal question of whether, under any set of facts which a feasibility study might reveal, Vashon could legally incorporate at this time." (Clerk's Papers at 39.) On August 11, 1994, the Board voted, unanimously, to direct its legal counsel to inform the Committee "that the Board is returning the Notice of Intention for incorporation of the City of Vashon Island, because the Board has determined, based on the advice of Special Assistant Attorney General Kaufman, that under state law the Board could not possibly approve

---

[3]RCW 35.02.037 provides, in part: "If a boundary review board or boards exists in the county or counties in which the proposed city or town is located, the petitioners shall file notice of the proposed incorporation with the boundary review board or boards."

the incorporation." (Clerk's Papers at 82.) On August 22, Special Assistant Attorney General Kaufman informed the Committee by letter that the Board accepted his opinion that it was "legally impossible to incorporate Vashon Island under existing law." (Clerk's Papers at 34.) Faced with this response, the Committee brought suit in King County Superior Court against the Boundary Review Board, seeking a writ of mandamus directing the Board to "review" their notice of intent to incorporate. (Clerk's Papers at 2.)

Another group, Citizens for Rural Oriented Government (CFROG), moved to intervene in the lawsuit. CFROG was joined in that motion by a member of that organization, Laura Wishik. A superior court judge granted their motion.

Another judge of the superior court denied the Committee's application for a writ of mandamus, indicating in a memorandum opinion that a 1994 amendment to RCW 36.93.150 was "intended to prevent the incorporation of land located outside of an urban growth area even if that land encompasses a population of 7,500 people or more." (Clerk's Papers at 200.) The Committee petitioned this court for direct review and we granted it.

## I

The Committee asserts that the trial court erred in permitting CFROG and Wishik to intervene. It contends that the Intervenors "lacked any legally recognized status, or any legally protected interest in the current matter." (Br. of Appellants at 28.)

The intervention of CFROG and Wishik was permitted by the trial court pursuant to the provisions of CR 24(a). That rule provides, in part:

> Upon timely application anyone shall be permitted to intervene in an action: . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his

ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

CFROG and Wishik both appear to fall within the parameters of the aforementioned rule, as applicants claiming an interest relating to the property or transaction which is the subject of the action. In that regard, the record shows that CFROG exists to promote preservation of the rural nature of Vashon. The submissions also reveal that Wishik is an owner of land on Vashon who is concerned about the effect a more densely populated Vashon would have on the quality of her well water.

■ Although the Intervenors' interests were, arguably, adequately represented by the Board, the term "interest" is to be construed broadly, rather than narrowly. *Fritz v. Gorton*, 8 Wn. App. 658, 660, 509 P.2d 83 (1973). In addition, even assuming intervention as a matter of right was not justified, permissive intervention pursuant to CR 24(b) was certainly appropriate here.[4] There was no error by the trial court in permitting the intervention.

## II

■ The principal question we have before us is whether the trial court erred in denying the Committee's application for a writ of mandamus compelling the Board to act on its petition to incorporate Vashon by reviewing the proposal. A writ of mandamus is appropriate to "compel the performance of an act which the law especially enjoins as a duty resulting from an office." RCW 7.16.160. Courts should, however, refrain from requiring the performance of useless or vain acts. *Neilson v. Vashon Island Sch. Dist. 402*, 87 Wn.2d 955, 960, 558 P.2d 167 (1976).

---

[4]CR 24(b) provides, in part: "Upon timely application, anyone may be permitted to intervene in an action:

". . . .

"(2) When an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

In denying the Committee's request for a writ of mandamus, the trial court concluded that the Board properly declined to review the proposed incorporation. This conclusion was based on its interpretation of a recent amendment to RCW 36.93.150(2) which, in the trial court's view, precluded incorporation of Vashon because the area comprising the proposed city was entirely outside of designated urban growth areas of King County.[5] The Committee asserts that the trial court erred in relying on the amended version of the statute, arguing that it had a "vested right" to have its notice evaluated under RCW 36.93.150(2) as it existed on March 23, 1994, the date the Committee filed the notice of incorporation and a date which preceded the aforementioned amendment. (Br. of Appellant at 13.) It also advances the related contention that the trial court erred in giving the amendment retroactive effect. We will discuss each of these arguments.

A

Vested Right

Prior to April 1, 1994, RCW 36.93.150(2) provided, in part, that:

a board shall not modify the proposed incorporation of a city with an estimated population of seven thousand five hundred or more by removing territory from the proposal, or adding territory to the proposal, that constitutes ten percent or more of the total area included within the proposal *before the board*, but shall not reduce the territory in such a manner as to reduce the population below seven thousand five hundred.

Laws of 1990, ch. 273, § 1, at 1550 (emphasis added). Effective April 1, 1994, the statute was amended. It now reads, following the above quoted phrase, "proposal before the board," as follows:

proposal *before the board*. However, a board shall remove ter-

_____

[5]RCW 36.70A.110 provides, in part: "Each county that is required or chooses to plan under RCW 36.70A.040 shall designate an urban growth area or areas within which urban growth shall be encouraged and outside of which growth can occur only if it is not urban in nature."

ritory in the proposed incorporation that is located outside of an urban growth area . . . before the area is established that is subject to this ten percent restriction on removing or adding territory. A board shall not modify the proposed incorporation of a city with a population of seven thousand five hundred or more to reduce the territory in such a manner as to reduce the population below seven thousand five hundred.

Laws of 1994, ch. 216, § 15, at 1094 (emphasis added).

The Committee's contention that it had a vested right to have its petition for incorporation evaluated under the version of RCW 36.93.150(2) that was extant on March 23, 1994, the date it filed its notice of intention to incorporate, is without merit. Although the Committee correctly observes that a statute will not be applied retroactively to violate vested rights, it cites no authority directly supporting its argument that it had a vested right to have its petition evaluated under the earlier version of RCW 36.93.150(2).[6]

■ Significantly, this court has never held that the vested rights doctrine applies in this context, that doctrine being generally limited to land use applications. *See Friends of the Law v. King County*, 123 Wn.2d 518, 869 P.2d 1056 (1994). In *Friends*, we held that " 'vesting' refers generally to the notion that a land use application, under the proper conditions, will be considered only under the

[6]The Committee does cite the famous United States Supreme Court case of *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L. Ed. 60 (1803) as support for its argument. It contends that, just as the legal right to an appointment as a justice of the peace for the District of Columbia vested in Marbury, the legal right to incorporate Vashon vested in the Committee.

In *Marbury*, however, Marbury's appointment to that office had become irrevocable because Congress had created the position and President Adams had signed his seal. The sole remaining step to make Marbury's appointment official was the ministerial task of issuing him a commission which Secretary of State James Madison refused to do.

For reasons set out below, we are satisfied that the Committee had no such a vested right. Having merely taken the first step toward incorporation, the Committee had, at best, an expectation that the statutory scheme of incorporation would remain unchanged during the incorporation process.

land use statutes and ordinances in effect at the time of the application's submission." *Friends of the Law*, 123 Wn.2d at 522. The purpose for the vesting doctrine in such cases "is to allow developers to determine, or 'fix,' the rules that will govern their land development." *West Main Assocs. v. City of Bellevue*, 106 Wn.2d 47, 51, 720 P.2d 782 (1986).

■ The vested rights doctrine is based on constitutional principles of fundamental fairness, reflecting an acknowledgment that development rights are valuable and protectable property rights. *Erickson & Assocs., Inc. v. McLerran*, 123 Wn.2d 864, 870, 872 P.2d 1090 (1994). However, "[a] vested right involves 'more than . . . a mere expectation'; the right must have become 'a title, legal or equitable, to the present or future enjoyment of property.' " *In re F.D. Processing, Inc.*, 119 Wn.2d 452, 463, 832 P.2d 1303 (1992) (citations omitted).

■■ In the present case we are not confronted with an application to develop property, nor is it a case dealing with a zoning-related matter. Rather, here we have an attempt by a committee of citizens to create a city in a rural area of a county. Those seeking to create a city should recognize that municipal corporations are merely political subdivisions of the State and the "number, nature and duration of the powers conferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the State." *Hunter v. City of Pittsburgh*, 207 U.S. 161, 178, 28 S. Ct. 40, 52 L. Ed. 151 (1907). Laws governing the creation of cities are, of course, subject to change and, in our judgment, no person or organization possesses a constitutionally protected right to have an incorporation petition considered under a law existing at the time it gave notice of its intention to seek incorporation of a certain area. *See Omega Nat'l Ins. Co. v. Marquardt*, 115 Wn.2d 416, 433, 799 P.2d 235 (1990) ("A

party has no vested right in the continuation of existing statutory law.").

## B
## Retroactive Application

The Committee asserts that the amended version of RCW 36.93.150(2) should not have governed the Board's consideration of its notice of intent to incorporate because, it argues, application of the amendment amounted to a retroactive application of the statute. As support for this argument, the Committee cites *Howell v. Spokane & Inland Empire Blood Bank*, 114 Wn.2d 42, 47, 785 P.2d 815 (1990) ("Statutory amendments are also presumed to be prospective unless there is a legislative intent to the contrary or the amendment is clearly curative."). The Committee again relies on its assertion that it was its letter notifying the Board of its intention to incorporate that triggered application of the statute.

We again disagree with the Committee. We are satisfied, for reasons we set forth hereafter, that the event that triggered application of the statute governing the Board's actions was the King County Council's request of the Board to review the proposed incorporation. We reach that conclusion because it was only then that the Board acquired jurisdiction to act on the proposed incorporation. As previously noted, the Committee notified the Board on March 23, 1994 of its intention to incorporate Vashon. That notice was insufficient to invoke the Board's jurisdiction, it being necessary for the Board to receive a proper request within forty-five days for it to act on a proposed incorporation.[7] Such a request occurred on May 2, 1994, the date that the King County Council requested the

---

[7]RCW 36.93.100 provides in part: **"Review of proposed actions by board— Procedure.** The board shall review and approve, disapprove, or modify any of the actions set forth in RCW 36.93.090 when any of the following shall occur within forty-five days of the filing of a notice of intention:

"(1) Three members of a five-member boundary review board or five members of a boundary review board in a county with a population of one million or more files a request for review . . .

Board to review the proposal for incorporation.[8] On the latter date, the amended version of RCW 36.93.150(2) was in effect.

■ ■ Even assuming, however, that the amended version of RCW 36.93.150(2) was given retroactive effect by the Board, it was not improper for it do so. A statute may be applied retroactively if the Legislature intended such a result. *F.D. Processing*, 119 Wn.2d at 452. Although the amendment contained no such language, the bill report contained in the 1994 Final Legislative Report reveals that this was the intent of the Legislature. The report states: "Provisions are included to apply these changes in the authority of a boundary review board to current incorporation efforts that were indicated by the filing of an incorporation petition prior to the effective date of this act." *Final Legislative Report*, 53rd Wash. State Leg., 26 (1994). "Recourse to the Final Legislative Report as an aid in determining intent has been sanctioned." *Brown v. City of Yakima*, 116 Wn.2d 556, 562, 807 P.2d 353 (1991); *see also Johnson v. Continental West, Inc.*, 99 Wn.2d 555, 561, 663 P.2d 482 (1983).

### III

Having concluded that the trial court was correct in holding that the amended version of RCW 36.93.150(2) governed the Board's actions in reviewing the Committee's notice of intent to incorporate, we must next determine if the trial court correctly concluded that the statute, as amended, precluded incorporation of Vashon.

---

" . . . .

"(2) Any governmental unit affected . . . or the county within which the area of the proposed action is located, files a request for review . . .

"(3) A petition requesting review is filed . . .

" . . . .

"(4) The majority of the members of boundary review boards concur with a request for review when a petition requesting the review is filed . . . ."

[8]Currently, boundary review boards are automatically required to review proposed incorporations. RCW 36.93.153. This requirement became effective, however, simultaneously with the amended version of RCW 36.93.150(2) on April 1, 1994.

 The Committee asserts that the trial court incorrectly concluded that RCW 36.93.150(2) was intended to preclude incorporation of land outside of designated urban growth areas. Rather, the Committee urges us to construe the statute as prohibiting the Board from altering any boundary or removing any territory from a proposed city, even nonurban growth areas of the county, if to do so would result in a reduction of the population of the area to be incorporated below 7500. While the Committee's interpretation, arguably, is reasonable, the statute can also reasonably be interpreted to provide, as the Board suggests, that all areas in the proposed city that are not within urban growth areas must be removed from the boundaries of the proposed incorporation, regardless of the effect such removal has on the population remaining in the proposed city. A statute is ambiguous if it can be reasonably interpreted in more than one way. *Timberline Air Serv., Inc. v. Bell Helicopter-Textron, Inc.*, 125 Wn.2d 305, 312, 884 P.2d 920 (1994).

 When a statute is ambiguous, we must attempt to determine the intent of the Legislature. *Human Rights Comm'n v. Cheney Sch. Dist. 30*, 97 Wn.2d 118, 121, 641 P.2d 163 (1982). In determining legislative intent, we are required to look at the entire statute, rather than the single phrase at issue. *Human Rights Comm'n*, 97 Wn.2d at 121. An examination of the entire chapter governing boundary review boards reveals that when a boundary review board is located in a county that is either required or chooses to plan subject to the Growth Management Act, its decisions must be consistent with certain provisions of the Growth Management Act including RCW 36.70A.110. RCW 36.93.157. Therein lies the problem. The Committee's interpretation of the current version of RCW 36.93.150(2) puts the statute at odds with RCW 36.70A.110(1), which indicates that every city located within a county with a comprehensive land use plan "shall be included within an urban growth area." Statutes touching upon the same subject are to be interpreted harmoni-

ously. *Condit v. Lewis Refrigeration Co.*, 101 Wn.2d 106, 110, 676 P.2d 466 (1984) (citing *Tommy P. v. Board of County Comm'rs*, 97 Wn.2d 385, 391, 645 P.2d 697 (1982)). The superior court's interpretation of RCW 36.93.150(2), to the effect that the Board must remove all land outside of the urban growth area of King County from the proposed city regardless of the consequences such removal has on the population in the remaining area, is an interpretation that can be harmonized with 36.70A.110(1). We are satisfied, therefore, that the trial court properly resolved the apparent ambiguity in favor of an interpretation of RCW 36.93.150(2) that results in a conclusion that incorporation of Vashon is an impossibility, because after all of the nonurban growth area is removed from the proposed incorporation, as it must be, nothing remains to be incorporated.

## IV

The Committee contends, additionally, that the amended version of RCW 36.93.150(2) violates the equal protection clause of our state and federal constitutions. Essentially, its argument is that the statute discriminates against persons living in rural areas of counties with boundary review boards because it forbids incorporation of rural areas in counties that have boundary review boards, while allowing incorporation of rural areas in counties that do not have boundary review boards.[9] As the Board and Intervenors correctly observe, this argument rests on the false premise that rural areas can be incorporated in counties that do not have boundary review boards. The premise is incorrect because in counties without boundary review boards, the county legislative authority "shall establish and define the boundaries of the proposed city or town, being authorized to decrease or increase the area proposed in the petition under the same restrictions that a bound-

---

[9]Boundary review boards are automatically conferred upon counties with populations greater than 210,000. Boundary review boards can also be created by the county legislative authority or by petition. RCW 36.93.030.

ary review board may modify the proposed boundaries." RCW 35.02.070(1). In short, counties that do not have boundary review boards are subject to the same rules that apply to the establishment of boundaries of proposed cities in counties with boundary review boards. There is no denial of equal protection.

## CONCLUSION

We are satisfied that the trial court did not err in denying the application for a writ of mandamus. While, arguably, a board is without authority to refuse to take action on a proposal to incorporate a city as was done here, mandamus does not, as we noted above, lie to compel a vain, useless or illegal act. Because all of Vashon lies outside of the designated urban growth areas of King County, the area cannot under current law be incorporated. It would, therefore, be a waste of time and taxpayer dollars to require the King County Boundary Review Board to further review a proposal to incorporate Vashon.

Finally, we note that the Committee makes the point that the trial court's decision is "contrary to our nation's long-held values of self-government and democracy" and should not, therefore, be allowed to stand. (Br. of Appellant at 1.) We do not see the lower court's decision as striking a blow against any principles of democracy. The manner in which cities are formed is a matter that is properly under the purview of the Legislature, the membership of which is popularly elected. It is, of course, not for this Court to comment on the wisdom of the statutory provisions we have been called upon to construe. We are satisfied, however, that current law does not permit incorporation of Vashon. If the Committee feels aggrieved by that determination, it can seek to obtain a change in the applicable statute.

Affirmed.

774

DURHAM, C.J., and DOLLIVER, SMITH, GUY, JOHNSON, MADSEN, TALMADGE, and PEKELIS, JJ., concur.