[Nos. 54101-3-I; 54527-2-I. Division One. February 7, 2005.]

STEVEN A. LEWIS, *Respondent*, v. THE DEPARTMENT OF LICENSING, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. KENNETH D. HIGGINS, *Petitioner*.

668

*Robert M. McKenna, Attorney General,* and *Masako Kanazawa, Assistant,* for appellant Department of Licensing.

*Francisco A. Duarte* (of *Fox Bowman Duarte*), for petitioner Higgins.

*Ryan B. Robertson,* for respondent Lewis.

*Norm Maleng, Prosecuting Attorney,* and *Susan K. Storey, Deputy,* for respondent State of Washington.

¶1 AGID, J. — In each of these linked cases, video cameras mounted in police cars made audio recordings of the conversations between arresting officers and drivers stopped for suspicion of driving under the influence of intoxicants (DUI). The drivers, Steven Lewis and Kenneth Higgins, assert that the recordings violate their privacy act (Act) rights because they did not comply with the Act's "in-car video" procedures, RCW 9.73.090(1)(c). In Lewis' case, the Department of Licensing (DOL) rejected the argument and revoked his license. The superior court reversed, and DOL appeals from that order. The district court in Higgins' case suppressed both the recording and testimony relating to it. The superior court reversed, and Higgins appeals that decision. DOL and the State argue that the privacy act does not apply because it covers only private conversations. They assert there is no reasonable

expectation of privacy in a conversation with a police officer who has pulled a driver over on suspicion of DUI. As a result, these could not be private conversations covered by the Act. Lewis and Higgins contend that the Act covers any conversation with a police officer resulting from a traffic stop unless the officer complies with the privacy act by informing the driver that the conversation is being recorded.

¶2 We hold that the privacy act applies only to private conversations, and the amendment governing sound recordings on which Lewis and Higgins rely does not expand the scope of the Act to cover the conversations at issue in their cases. Because these conversations were not private, the police officers were not required to notify the drivers that they were making an audio recording, and those recordings should not have been suppressed. We reverse the superior court in *Lewis* and reinstate DOL's driver's license revocation order. We affirm the superior court's order reversing the district court in *Higgins*.

## FACTS

### *Department of Licensing v. Lewis*

¶3 Around 1:00 A.M. on December 12, 2002, Officer Douglas Faini of the Auburn Police Department observed Steven Lewis driving over the speed limit. He saw Lewis turn quickly into a restaurant parking lot without signaling and throw a beer can out of the window just before he stopped. A video camera mounted in Officer Faini's police car made audio and video recordings of the conversation between Faini and Lewis.

¶4 Officer Faini approached Lewis' truck and began talking to him. Lewis was totally unresponsive and visibly intoxicated. Officer Faini called for additional officers to help arrest Lewis, who would not get out of his truck. After repeated warnings with no response from Lewis, another officer used a taser to get him out of the truck. At this point

the officers handcuffed Lewis, and Officer Faini arrested him and placed him in the police car.[1]

¶5 At the police station, Officer Faini read Lewis the statutory implied consent warnings.[2] Lewis refused to take a breath test. Based on Officer Faini's sworn report, DOL revoked Lewis' driver's license for two years.[3] Lewis contested the revocation at a DOL administrative hearing, where he moved to suppress all the State's evidence because Officer Faini violated his privacy act rights by not advising him he was being recorded. The hearing examiner upheld the revocation, finding that Officer Faini had advised Lewis that he was being recorded. Lewis appealed this decision to King County Superior Court, which overturned the revocation. It ruled that substantial evidence did not support DOL's finding that Officer Faini advised Lewis about the recording and that the privacy act's exclusionary rule required suppression of all evidence before the hearing examiner.

## State v. Higgins

¶6 On the evening of October 20, 2001, based on a witness's report of erratic driving, State Trooper S.M. Cheek began following the car Kenneth Higgins was driving. After observing sustained weaving, Trooper Cheek activated his lights and pulled Higgins over. A video camera mounted in Cheek's police car made audio and video recordings of the conversation between Trooper Cheek and Higgins.

---

[1] While escorting Lewis to the police car, the officers commented that Lewis was not even awake at that point. Lewis raised his head, stood up, and said "Man, I've been awake, why'd you all do this to me?" This is the only audible utterance from Lewis on the tape.

[2] Under Washington's implied consent statute, a driver impliedly consents to a breath test if arrested by an officer having reasonable grounds to believe the driver was driving under the influence. RCW 46.20.308(1).

[3] Refusal to take a breath test requires DOL to revoke the driver's license. RCW 46.20.308(7).

¶7 When Trooper Cheek approached the driver's side window, his first statement to Higgins was "I want to let you know you're being recorded." Higgins responded to Trooper Cheek's questions but when he refused to perform field sobriety tests, Trooper Cheek arrested Higgins on suspicion of DUI. After putting Higgins in the police car, Trooper Cheek read him his *Miranda*[4] rights and asked "Do you understand these rights? I'm going to remind you that you are being recorded." When they arrived at the police station, Trooper Cheek took Higgins inside, and neither of them appears on the video portion of the recording again. But the audio portion of the recording continued during their conversation inside the station.

¶8 On May 14, 2003, the King County District Court granted Higgins' motion to suppress the recording and all evidence obtained during the recording. Higgins argued that Trooper Cheek violated his privacy act rights by not properly advising him he was being recorded. The State appealed to the King County Superior Court, which reversed the district court's suppression order and remanded for a ruling consistent with its conclusion that the conversations were not private or, if they were, that Trooper Cheek complied with the advisement requirement in RCW 9.73.090(1)(c).

## DISCUSSION

■■ ¶9 These cases involve the same central issue— whether Washington's privacy act[5] applies to conversations between officers and drivers during a traffic stop. We accepted review to address disparities in lower courts' rulings and confusion among law enforcement agencies about this issue. RALJ 9.1 governs our review of an order by a court of limited jurisdiction,[6] and the implied consent statute governs our review of DOL's license revocation

---

[4] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[5] RCW 9.73.010-.260.

[6] *State v. Frank*, 112 Wn. App. 515, 520, 49 P.3d 954 (2002).

order.[7] We review the orders for errors of law and the factual findings, implicit or explicit, to determine whether they are supported by substantial evidence.[8]

## I. *Does the Privacy Act Apply?*

¶10 Washington's privacy act prohibits intercepting or recording any private conversation or communication without the consent of all persons involved.[9] Any information obtained in violation of this rule is inadmissible in Washington courts.[10] RCW 9.73.090 exempts law enforcement personnel from the prohibitions of the general rule in certain instances.[11] The exemption at issue here is the in-car video provision, RCW 9.73.090(1)(c). It creates an exception for "[s]ound recordings that correspond to video images recorded by video cameras mounted in law enforcement vehicles," provided the recordings meet specified conditions.[12]

---

[7] RCW 46.20.308; *Clement v. Dep't of Licensing*, 109 Wn. App. 371, 374, 35 P.2d 1171 (2001), *review denied*, 146 Wn.2d 1017 (2002).

[8] *Frank*, 112 Wn. App. at 520 (citing RALJ 9.1(a), (b)); RCW 34.05.570(3)(d)-(e). *See also Alforde v. Dep't of Licensing*, 115 Wn. App. 576, 579, 63 P.3d 170, *review denied*, 150 Wn.2d 1004 (2003) (discussing review of license revocations under the implied consent statutory provision, RCW 46.20.308(9)).

[9] RCW 9.73.030(1)(a)-(b) provides:

(1) Except as otherwise provided in this chapter, it shall be unlawful for any individual, partnership, corporation, association, or the state of Washington, its agencies, and political subdivisions to intercept, or record any:

(a) Private communication transmitted by telephone, telegraph, radio, or other device between two or more individuals between points within or without the state by any device electronic or otherwise designed to record and/or transmit said communication regardless how such device is powered or actuated, without first obtaining the consent of all the participants in the communication;

(b) Private conversation, by any device electronic or otherwise designed to record or transmit such conversation regardless how the device is powered or actuated without first obtaining the consent of all the persons engaged in the conversation.

[10] RCW 9.73.050.

[11] RCW 9.73.090(1).

[12] RCW 9.73.090(1)(c).

¶11 The general exemption language and the in-car video provision read as follows:

(1) The provisions of RCW 9.73.030 through 9.73.080 shall not apply to police, fire, emergency medical service, emergency communication center, and poison center personnel in the following instances:

. . . .

(c) Sound recordings that correspond to video images recorded by video cameras mounted in law enforcement vehicles. All law enforcement officers wearing a sound recording device that makes recordings corresponding to videos recorded by video cameras mounted in law enforcement vehicles must be in uniform. A sound recording device which makes a recording pursuant to this subsection (1)(c) may only be operated simultaneously with the video camera. No sound recording device may be intentionally turned off by the law enforcement officer during the operation of the video camera.

No sound or video recording made under this subsection (1)(c) may be duplicated and made available to the public by a law enforcement agency subject to this section until final disposition of any criminal or civil litigation which arises from the incident or incidents which were recorded. Such sound recordings shall not be divulged or used by any law enforcement agency for any commercial purpose.

A law enforcement officer shall inform any person being recorded by sound under this subsection (1)(c) that a sound recording is being made and the statement so informing the person shall be included in the sound recording, except that the law enforcement officer is not required to inform the person being recorded if the person is being recorded under exigent circumstances. A law enforcement officer is not required to inform a person being recorded by video under this subsection (1)(c) that the person is being recorded by video.[13]

¶12 RCW 9.73.090 is a proviso limiting the circumstances in which the general rule of the statute applies. And, the general rule of the privacy act is that it applies

---

[13] *Id.*

only to "private" communications.[14] Thus, the threshold inquiry is whether these communications are "private."[15] We determine whether a given communication is private on a case-by-case basis.[16] Whether a conversation is private is usually a question of fact, but can be a question of law if the facts are undisputed.[17] Except for the question of whether Officer Faini informed Lewis he was being recorded, the facts in both of these cases are undisputed.

■■ ¶13 The legislature has never defined "private" in the context of the Act, but we did so in *State v. Forrester*.[18] Relying on the dictionary definition, we held that the term meant " ' . . . secret . . . intended only for the persons involved (a conversation) . . . holding a confidential relationship to something . . . a secret message: a private communication . . . secretly: not open or in public.' "[19] In determining whether a conversation is private, we consider the subjective intent of the parties involved.[20] We also consider additional factors

> "bearing on the reasonableness of the participants' expectations, such as the duration and subject matter of the communication; the location of the communication and the presence of potential third parties; and the role of the nonconsenting party and his or her relationship to the consenting party."[21]

---

[14] *State v. Clark*, 129 Wn.2d 211, 224, 916 P.2d 384 (1996) (citing *Kadoranian v. Bellingham Police Dep't*, 119 Wn.2d 178, 189, 829 P.2d 1061 (1992)).

[15] *State v. Flora*, 68 Wn. App. 802, 808, 845 P.2d 1355 (1992).

[16] *Clark*, 129 Wn.2d at 232 n.18.

[17] *State v. Christensen*, 119 Wn. App. 74, 79 P.3d 12 (2003) (citing *Clark*, 129 Wn.2d at 225), *reversed on other grounds*, 153 Wn.2d 186, 102 P.3d 789 (2004).

[18] 21 Wn. App. 855, 861, 587 P.2d 179 (1978), *review denied*, 92 Wn.2d 1006 (1979).

[19] *Id.* (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1969)). The Washington Supreme Court adopted this definition of "private" in *Kadoranian*, 119 Wn.2d at 190.

[20] *Clark*, 129 Wn.2d at 225 (citing *State v. Faford*, 128 Wn.2d 476, 910 P.2d 447 (1996)).

[21] *Christensen*, 119 Wn. App. at 78-79 (quoting *State v. Townsend*, 147 Wn.2d 666, 673-74, 57 P.3d 255 (2002)).

Both Lewis and Higgins concede, as they should, that their conversations with the arresting officers were not private under this definition.

■ ¶14 Rather, they argue that when the legislature enacted the in-car video provision,[22] it expanded the Act to include nonprivate traffic stop conversations not exempted by that provision. In other words, they assert that if an in-car recording is not exempt, the captured conversation is per se covered by the Act regardless of whether it is private. DOL and the State respond that the in-car video provision does not expand the coverage of the Act to include nonprivate communications. We review de novo the construction of a statute.[23]

¶15 Lewis and Higgins argue that the Act applies per se to traffic stop conversations where the sound portion is recorded by a police car-mounted video camera unless the officer complies with the statutory conditions for an exemption. They argue that Washington case law already established that a roadside traffic stop was not private,[24] and thus the legislature had no reason to create an exception for roadside traffic stops under existing law. They maintain that the legislature would not have enacted the in-car video provision unless it believed that the exceptions it contains were necessary because traffic stop conversations would otherwise fall within the scope of the Act. Finally, they assert that the State's interpretation of the statute renders RCW 9.73.090(1)(c) superfluous.

¶16 The State argues that in enacting the in-car video language, the legislature did not change the established rule that the Act protects only private communications and conversations. It asserts that the provision established a

---

[22] RCW 9.73.090(1)(c).

[23] *State v. Wentz*, 149 Wn.2d 342, 346, 68 P.3d 282 (2003).

[24] *See Clark*, 129 Wn.2d at 215 (holding that "conversations on public streets between the defendants and a stranger who happened to be an undercover police informant" are not private); *State v. Bonilla*, 23 Wn. App. 869, 873, 598 P.2d 783 (1979) (conversations with police dispatcher are not private); *Flora*, 68 Wn. App. at 808 (when arrestee recorded interaction with officer during arrest, court held the exchange was not private).

"safe harbor" which allows police to record traffic stop communications without fear that a court would later determine that they were private and exclude them. It contends that rather than broadening the Act, the provision creates a new exception by defining limited conditions under which police can record even a private conversation without violating the Act and risking suppression of the evidence.

¶17 Washington courts have not previously interpreted RCW 9.73.090(1)(c). In doing so, we must give effect to the legislature's intent,[25] and we discern that intent within the context of the entire statute.[26] Courts presume the legislature is familiar with past judicial interpretations of its statutes[27] and construe a statute so that no portion is rendered meaningless or superfluous.[28] Where the statute's language is clear, we derive legislative intent from the statute alone.[29] If the statute is ambiguous, we look to the statute's construction, legislative history, and relevant case law to determine legislative intent.[30] A statute is ambiguous if one could reasonably give it different interpretations.[31]

> The appropriate office of a proviso or exception is to restrain or modify the declaring or enacting part of the statute or to except something which would otherwise be in the enacting clause. It

---

[25] *Wentz*, 149 Wn.2d at 346 (citing *Waste Mgmt. of Seattle, Inc., v. Utils. & Transp. Comm'n*, 123 Wn.2d 621, 629, 869 P.2d 1034 (1994)).

[26] *Davis v. Dep't of Licensing*, 137 Wn.2d 957, 963, 977 P.2d 554 (1999) (citing *State v. Elgin*, 118 Wn.2d 551, 556, 825 P.2d 314 (1992); *State ex rel. Royal v. Bd. of Yakima County Comm'rs*, 123 Wn.2d 451, 459, 869 P.2d 56 (1994)).

[27] *State v. Calderon*, 102 Wn.2d 348, 351, 684 P.2d 1293 (1984) (citing *Glass v. Stahl Specialty Co.*, 97 Wn.2d 880, 887, 652 P.2d 948 (1982)).

[28] *Id.* (citing *Stone v. Chelan County Sheriff's Dep't*, 110 Wn.2d 806, 810, 756 P.2d 736 (1988); *Tommy P. v. Bd. of County Comm'rs*, 97 Wn.2d 385, 391, 645 P.2d 697 (1982)).

[29] *Wentz*, 149 Wn.2d at 346.

[30] *State v. Watson*, 146 Wn.2d 947, 955, 51 P.3d 66 (2002).

[31] *Vashon Island Comm. for Self-Gov't v. Wash. State Boundary Review Bd.*, 127 Wn.2d 759, 771, 903 P.2d 953 (1995).

is not the purpose of a proviso to enlarge upon the enacting clause.[32]

Lewis and Higgins do not point to anything in the statute or its legislative history supporting their contention that in enacting the in-car video provision, the legislature implicitly created an entire class of nonprivate communications that are per se covered by the Act. Because the Act covers only "private" communications, the proviso in turn can cover only "private" communications. Nothing in RCW 9.73.090's plain language or legislative history indicates that the legislature intended to protect nonprivate communications from recording or interception. If the legislature wanted to effect such a major change in the scope of the privacy act, it would say so explicitly. We "will not assume that the Legislature would effect a significant change in legislative policy by mere implication."[33]

¶18 Lewis and Higgins nonetheless assert that the provision becomes superfluous and meaningless unless the legislature intended that traffic stop communications be protected by the Act. They rely on the Washington Supreme Court's reasoning in *State v. Wanrow*.[34] There, the court held that the exemption in RCW 9.73.090(1)(a)[35] for incoming phone calls to emergency personnel had no purpose unless the legislature believed those calls were otherwise covered by the Act.[36] It stated that "to interpret the privacy statute so that no portion of it is superfluous or insignificant, we must conclude that such telephone calls would fall within RCW 9.73.030(1) but for their exclusion by RCW 9.73.090."[37]

---

[32] *Jepson v. Dep't of Labor & Indus.*, 89 Wn.2d 394, 403, 573 P.2d 10 (1977).

[33] *Calderon*, 102 Wn.2d at 351 (citing *In re Marriage of Little*, 96 Wn.2d 183, 634 P.2d 498 (1981)).

[34] 88 Wn.2d 221, 559 P.2d 548 (1977).

[35] Formerly RCW 9.73.090(1).

[36] *Wanrow*, 88 Wn.2d at 228.

[37] *Id.* (citation omitted).

¶19 But the legislature responded to *Wanrow* by amending RCW 9.73.090(1)(a) to effectively nullify *Wanrow*'s holding.[38] Later, in *State v. Clark*, the Washington Supreme Court did not follow its analysis in *Wanrow*, but instead addressed the threshold issue of whether the conversations were private.[39] It did not reach the question whether the recording qualified for an exemption because it held that the conversations were not private. This portion of *Wanrow* is no longer good law.

¶20 We agree with the State's argument that its interpretation does not render the in-car video provision superfluous or meaningless. RCW 9.73.090(1) expands an exemption from the privacy act by allowing sound recordings of *private* conversations as long as the recordings are made in accordance with the statutory conditions. This is a legitimate legislative purpose. The amendment was designed to permit the police to record a traffic stop conversation even if a court later ruled the conversation was private and the Act applies. This interpretation does not render the provision superfluous or meaningless, and it is supported both by the plain language and legislative history of the provision. Contrary to Lewis' and Higgins' argument that the provision reflects an intent to give traffic stop conversations more protection under the privacy act, a review of the legislative history leads to the opposite conclusion. For example, the House report states:

> People pulled over for a traffic stop have a lower expectation of privacy than situations involving wiretaps. Allowing sound recordings in this context will help ensure officer safety, provide an important evidentiary tool, and create a checks and balances system for officer conduct.[40]

---

[38] *See Bonilla*, 23 Wn. App. at 873-74.

[39] *See State v. Clark*, 129 Wn.2d 211, 916 P.2d 384 (1996).

[40] H.B. Rep. (H.B. 2903) 56th Leg., Reg. Sess. (Wash. 2000).

In passing the in-car video provision, the legislature intended "to provide a very limited exception to the restrictions on disclosure of intercepted communications."[41]

¶21 The legislature enacted the provision with the expectation that it would facilitate broader use of sound recordings in traffic stop situations where potentially private conversations occurred.[42] As Lewis and Higgins acknowledge, sound recordings of nonprivate traffic stop communications were already allowed prior to 2000. If the legislature intended to expand the ability of police to audio record traffic stop communications, it had to allow recording of certain private communications because public communications could already be recorded. The in-car video provision dictates the conditions under which law enforcement personnel can record a traffic stop conversation even though the communication may be "private."

¶22 Section 9.73.090(1) clearly states that the Act's general rule, RCW 9.73.030, does *not apply* in certain "instances." The general rule prohibits the interception or recording of private communications. In the designated instances where the general rule does not apply, private communications may be intercepted or recorded. The in-car video provision is simply one of those instances in which police may record private traffic stop communications. It does not change the rule that the Act covers only private communications.

¶23 To adopt Lewis' and Higgins' interpretation would require us to infer the legislature intended to make a significant change in the scope of the Act. But nothing in the text of the Act or its legislative history indicates that the legislature intended the in-car video provision to change the rule that the Act covers only private communications,

---

[41] LAWS OF 2000, ch. 195, § 1.

[42] For example, it would allow police to record a conversation between two passengers in the car even though the passengers intended the conversation to be private if the officer complied with the statutory conditions. The content of the "private" conversation could then be offered in a court proceeding.

and we cannot infer that it did.[43] Thus, the threshold determination in any privacy act claim remains whether a given communication is "private." Because the communications at issue here were not private, the in-car video provision does not apply.

## II. *Advisement Requirement*

¶24 Higgins argues that the in-car video provision requires that police use specific language when advising the driver that the officer is making an audio recording. Although unnecessary to our holding, we discuss the issue to provide clarification for the lower courts and law enforcement.

¶25 One of the conditions of the in-car video provision requires that the law enforcement officer advise

> any person being recorded by sound under this subsection (1)(c) that a sound recording is being made and the statement so informing the person shall be included in the sound recording, except that the law enforcement officer is not required to inform the person being recorded if the person is being recorded under exigent circumstances. A law enforcement officer is not required to inform a person being recorded by video under this subsection (1)(c) that the person is being recorded by video.[44]

Trooper Cheek advised Higgins: "I want to let you know you're being recorded." Higgins argues that Cheek had to advise him that a "sound" recording was being made. The district court agreed with him, holding that the "legislative intent and clear and unambiguous language of RCW 9.73.090 mandates the officer inform a defendant a 'sound recording' is being made and the advice made part of the taped record. Both are absent here." The State argues that no specific language is required and that Trooper Cheek's statement properly informed Higgins he was being sound recorded. As stated above, Washington courts have not interpreted RCW 9.73.090(1)(c).

[43] *Calderon*, 102 Wn.2d at 351.

[44] RCW 9.73.090(1)(c).

¶26 Although the statute requires that the officer inform the detained person that a sound recording is being made, it does not dictate what language an officer must use. If the legislature wanted to require officers to use only specific words, it could have said so. The context of the advisement requirement supports our ruling that Trooper Cheek's advisement was sufficient.

¶27 The in-car video provision also explicitly states that a video recording without sound requires no notice. The State argues that the legislature used the word "sound" simply to distinguish between an audio recording and a video recording. The legislative history supports the State's argument. In interpreting a statute, we may consider the differences between sequential drafts of a bill.[45] The third version of the in-car video provision was the first to contain the advisement requirement, stating only that the officer must advise that a "recording is being made."[46] There is no mention of "sound," and this version also did not reference video recording. The fourth and final version of the provision was the first time the advisement requirement included the word "sound." It was also the first time the legislature included language to clarify that no advisement was necessary for video recordings.[47] This demonstrates that the reason the legislature used the word "sound" was to differentiate between recordings which require notice and those that do not. Nothing in any of the drafts of the amendment indicates that the legislature wanted to require that officers use specific words in advising a detainee.

¶28 The plain language and legislative history of the advisement requirement indicate that the advisement need only include language that would put a reasonable person on notice that the conversation was being sound recorded. The State argues that the language Trooper Cheek used put Higgins on notice that he was being sound recorded. While

[45] *State v. Martin*, 94 Wn.2d 1, 19, 614 P.2d 164 (1980).

[46] THIRD SUBSTITUTE H.B. 2903, 56th Leg., Reg. Sess. (Wash. 2000).

[47] H.B. 2903, 56th Leg., Reg. Sess. (Wash. 2000).

including the word "sound" or "audio" would be more explicit, we agree that it is not necessary. In fact, it might have a misleading effect because a driver could interpret the statement to mean there was no video recording.

¶29 A reasonable person would know that the statement "you're being recorded" means they are being videotaped or audio taped or both. Even if Higgins assumed he was only being videotaped, a claim he does not make, it is common knowledge that sound typically accompanies video recordings. We hold that a reasonable person would understand that the statement "you are being recorded" includes sound.

KENNEDY and SCHINDLER, JJ., concur.

Reconsideration granted and opinion modified March 21, 2005.

Review granted at 155 Wn.2d 1014 (2005).