[No. 63865-3-I.   Division One.   October 12, 2009.]

HARLAN CLAIRE STIENTJES FAMILY TRUST ET AL., *Respondents*, v. THURSTON COUNTY, *Defendant*, LARESSA VIA-FOURRE ET AL., *Appellants*.

*Paul J. Hirsch*, for appellants.
*Harlan C. Stientjes*, for respondents.

¶1 DWYER, A.C.J. — Pursuant to the Land Use Petition Act (LUPA), chapter 36.70C RCW, a court may review a

local government's land use decision only if the decision is final. A land use decision is final when it leaves nothing open to further dispute and sets to rest the cause of action between the parties. In this case, the Thurston County Board of County Commissioners (BOCC) remanded an administrative challenge to a construction site plan to its hearing examiner for further proceedings. The superior court reversed this decision. However, the BOCC's decision was not a final decision because it did not conclusively determine the rights of the parties by settling the challenging party's entitlement to relief. Therefore, the superior court lacked authority to conduct a LUPA review of the BOCC's decision. Accordingly, we reverse the superior court's ruling and remand this matter to the BOCC for reinstatement of its earlier decision.

I

¶2 This LUPA petition stems from a dispute between two neighboring couples—Laressa Via-Fourre and Charles Via (together, Via-Fourre) and Harlan and Mary Jo Stientjes[1] (together, Stientjes)—concerning the construction of a detached carport on Stientjes' property. The parties' properties abut one another on a marine bluff. On July 11, 2007, Stientjes applied for and obtained a building permit from the Thurston County Development Services Department (DSD) for construction of the carport. DSD issued the permit even though Stientjes' application omitted certain requested information about the property, including (1) a construction site plan indicating the location of required marine setbacks and buffers and (2) statements as to whether the property was within 300 feet of water and contained slopes with grades steeper than 50 percent.

¶3 Pursuant to the Thurston County Code (TCC), TCC 20.60.060, a person aggrieved by a DSD decision has 14

---

[1] Although the Harlan Claire Stientjes Family Trust is a designated party, we refer to the respondents in their individual capacities, consistent with the parties' briefing.

days to appeal from the decision to the county hearing examiner. Although Via-Fourre opposed construction of the carport, she did not formally challenge DSD's decision to issue the building permit by filing an administrative appeal within this time frame. Instead, at some point in late July and again in August, she informally raised concerns with DSD about whether the proposed location of the carport would satisfy marine bluff setback requirements under the county's Critical Areas Ordinance (CAO), TCC 17.15.620.

¶4 In response to Via-Fourre's concerns, DSD personnel inspected Stientjes' construction site in late August. They determined that the site plan did not contain sufficient setbacks, relative to both Stientjes' property boundary and the height of the marine bluff, to meet CAO requirements. Accordingly, they posted a stop work order at the site.

¶5 However, the stop work order was short lived. On the basis of new information, DSD subsequently determined that the site plan satisfied CAO setback requirements. On November 19, it lifted the stop work order, allowing the planned construction to proceed subject to additional conditions.

¶6 On November 30, Via-Fourre appealed from DSD's decision to lift the stop work order to the county hearing examiner. She raised several issues in the appeal, including whether DSD's calculations of the setback positions were accurate and whether the setbacks complied with the requirements of the CAO. Although Via-Fourre appealed from DSD's decision to remove the stop work order, she specifically referred to Stientjes' building permit as the basis for her appeal.

¶7 The hearing examiner subsequently denied Via-Fourre's request for relief, dismissing her administrative appeal as untimely. After determining that Via-Fourre's appeal concerned the building permit issued on July 11, the hearing examiner concluded that her appeal was untimely under LUPA's strict requirement that an appeal from a final land use decision be filed in the appropriate superior

court within 21 days of the decision.[2] *See* RCW 36.70C-.040(3). The hearing examiner did not address whether Via-Fourre had complied with the county code's 14-day time limit for filing administrative appeals or whether DSD's November 19 decision to lift the stop work order constituted a land use decision separate from the July 11 permit decision.

¶8 Via-Fourre then appealed from the hearing examiner's order to the BOCC.[3] The BOCC reversed the hearing examiner's ruling that Via-Fourre's challenge was time barred and remanded Via-Fourre's cause for further review. In so doing, it emphasized that the cause concerned whether DSD had correctly applied the CAO in deciding to lift the stop work order. In remanding the cause for further proceedings, the BOCC specifically directed the hearing examiner to determine whether the site plan complied with the CAO. The BOCC did not revoke Stientjes' permit or otherwise encumber his right to construct the carport as granted by the building permit.[4]

¶9 Stientjes then sought LUPA review of the BOCC's decision in superior court. The superior court granted Stientjes' petition, reversing the BOCC's decision and reinstating the hearing examiner's order of dismissal. The superior court concluded that Via-Fourre's failure to challenge the building permit within 21 days of its initial issuance rendered any subsequent challenge concerning the permit an impermissible collateral attack.

---

[2] The hearing examiner so ruled, even though LUPA governs judicial review of local land use decisions as opposed to setting forth procedures applicable to local administrative processes.

[3] TCC 20.60.060(2) provides that an aggrieved person may appeal from a hearing examiner's land use decision to the BOCC.

[4] Indeed, the record indicates that Stientjes eventually completed construction on the carport.

II

¶10 Via-Fourre contends that the BOCC's decision was not a final land use decision and therefore the superior court lacked authority to review it. We agree.

■ ■ ¶11 With certain exceptions not pertinent here, LUPA provides the "exclusive means of judicial review of land use decisions." RCW 36.70C.030(1);[5] *Samuel's Furniture, Inc. v. Dep't of Ecology*, 147 Wn.2d 440, 449, 54 P.3d 1194, 63 P.3d 764 (2002). LUPA defines a "land use decision" as the "*final* determination by a local jurisdiction's body or officer with the highest level of authority to make the determination, including those with authority to hear appeals," on administrative actions and interpretation of regulations affecting the use of real property. RCW 36.70C-.020(2) (emphasis added);[6] *see also Chelan County v. Nykreim*, 146 Wn.2d 904, 52 P.3d 1 (2002) (holding that a

---

[5] RCW 36.70C.030(1) provides, in pertinent part:

[LUPA] replaces the writ of certiorari for appeal of land use decisions and shall be the exclusive means of judicial review of land use decisions, except that this chapter does not apply to:

(a) Judicial review of:

(i) Land use decisions made by bodies that are not part of a local jurisdiction;

(ii) Land use decisions of a local jurisdiction that are subject to review by a quasi-judicial body created by state law, such as the shorelines hearings board, the environmental and land use hearings board, or the growth management hearings board;

(b) Judicial review of applications for a writ of mandamus or prohibition; or

(c) Claims provided by any law for monetary damages or compensation.

[6] RCW 36.70C.020(2) provides, in full:

"Land use decision" means a final determination by a local jurisdiction's body or officer with the highest level of authority to make the determination, including those with authority to hear appeals, on:

(a) An application for a project permit or other governmental approval required by law before real property may be improved, developed, modified, sold, transferred, or used, but excluding applications for permits or approvals to use, vacate, or transfer streets, parks, and similar types of public property; excluding applications for legislative approvals such as area-wide rezones and annexations; and excluding applications for business licenses;

(b) An interpretive or declaratory decision regarding the application to a specific property of zoning or other ordinances or rules regulating the improvement, development, modification, maintenance, or use of real property; and

local jurisdiction's decision concerning a building permit application constitutes a land use decision). For a superior court to have the authority to conduct a LUPA review of a local government's land use decision, the appeal "must be from a final governmental decision." *Nykreim*, 146 Wn.2d at 938; *see also Sheng-Yen Lu v. King County*, 110 Wn. App. 92, 100, 38 P.3d 1040 (2002) (concluding that "courts should generally defer review of decisions involving the use of land until such decisions are final—that is when the highest body or officer has finally acted").

¶12 In the context of applying LUPA, our Supreme Court has explained that "[a] 'final decision' is '[o]ne which leaves nothing open to further dispute and which sets at rest [the] cause of action between parties.' " *Samuel's Furniture*, 147 Wn.2d at 452 (second alteration in original) (quoting Black's Law Dictionary 567 (5th ed. 1979)). In other words, " '[a] judgment is considered final on appeal if it concludes the action by resolving the plaintiff's entitlement to the requested relief.' " *Samuel's Furniture*, 147 Wn.2d at 452 (quoting *Purse Seine Vessel Owners Ass'n v. State*, 92 Wn. App. 381, 387, 966 P.2d 928 (1998)). Further, "[a] decision must be either final or interlocutory for appellate purposes." *Samuel's Furniture*, 147 Wn.2d at 452. An "interlocutory decision" is "one that is 'not final,' but is instead 'intervening between the commencement and the end of a suit which decides some point or matter, but is not a final decision of the whole controversy.' " *Samuel's Furniture*, 147 Wn.2d at 452 (quoting Black's, *supra*, at 731).

¶13 LUPA's requirement of finality comports with the principle that judicial review on a piecemeal basis is generally disfavored. *See Fox v. Sunmaster Prods., Inc.*, 115 Wn.2d 498, 503-04, 798 P.2d 808 (1990); *State ex rel. Stone v. Superior Court*, 97 Wash. 172, 176, 166 P. 69 (1917). Indeed, courts have "long recognized the strong public

(c) The enforcement by a local jurisdiction of ordinances regulating the improvement, development, modification, maintenance, or use of real property. However, when a local jurisdiction is required by law to enforce the ordinances in a court of limited jurisdiction, a petition may not be brought under this chapter.

policy evidenced in LUPA, supporting administrative finality in land use decisions" before courts of law review administrative decisions of local jurisdictions. *James v. Kitsap County*, 154 Wn.2d 574, 589, 115 P.3d 286 (2005) (citing *Nykreim*, 146 Wn.2d at 931-32); *see also Habitat Watch v. Skagit County*, 155 Wn.2d 397, 421, 120 P.3d 56 (2005) (Chambers, J., concurring) (observing that "the overwhelming purpose of LUPA was to unburden land use decisions from protracted litigation"). In tandem with LUPA's exhaustion of administrative remedies requirement, RCW 36.70C.060(2)(d), the finality requirement prevents a party from needlessly turning to a court for judicial relief when a local authority may still provide the requested relief. *See S. Hollywood Hills Citizens Ass'n for Pres. of Neighborhood Safety & Env't v. King County*, 101 Wn.2d 68, 73-74, 677 P.2d 114 (1984) (discussing exhaustion of remedies requirement in context of challenge to plat approval for subdivision construction (citing *McKart v. United States*, 395 U.S. 185, 89 S. Ct. 1657, 23 L. Ed. 2d 194 (1969))). In short, the finality requirement of LUPA eliminates "premature judicial intrusion into land use decisions." *Sheng-Yen Lu*, 110 Wn. App. at 101.

¶14 The finality requirement was not satisfied herein. Although the BOCC is the highest level of authority in the county to make land use decisions and had the authority to hear Via-Fourre's appeal from the hearing examiner's decision, its decision was not final for purposes of review under LUPA. In reversing the hearing examiner's ruling and remanding the cause for consideration of whether DSD had properly applied the CAO to Stientjes' site plan, the BOCC did not reinstate the stop work order, much less reverse DSD's decision to issue the building permit in the first instance. Nor did it affirm the hearing examiner's order of dismissal. As it did not settle the controversy between the parties, the BOCC's decision was akin to a court order denying a dispositive pretrial motion from which an appeal

may not be taken. The decision was, by definition, interlocutory, rather than final.[7]

¶15 Stientjes incorrectly asserts that judicial review of the BOCC's decision was nonetheless appropriate because Via-Fourre's administrative challenge should be viewed as nothing other than an impermissible collateral attack on DSD's initial decision to issue the building permit.[8] Even if Stientjes is ultimately correct that Via-Fourre's challenge to DSD's decision is time barred, the BOCC's interlocutory decision reversing the hearing examiner's ruling on this point was not a final decision for LUPA purposes. Whereas a decision affirming the hearing examiner's ruling would have conclusively settled the issue of Via-Fourre's entitlement to relief, the BOCC's decision to reverse and remand did not affect Stientjes' rights to develop his property. Indeed, Stientjes may very well prevail on remand. Whether a land use decision is final turns on whether the governmental action at issue " 'reaches the merits,' " not on whether the wisdom of such action is " 'potentially debatable.' " *Samuel's Furniture*, 147 Wn.2d at 452. A local jurisdiction's decision concerning a building permit application is final for purposes of LUPA if a party "receive[s] the relief it had requested" and

---

[7] Analytically, the BOCC's decision is no different from the actions of other local governmental authorities that have been held to be interlocutory because they did not settle the controversy between the parties. *See, e.g., Heller Bldg., LLC v. City of Bellevue*, 147 Wn. App. 46, 56, 194 P.3d 264 (2008) (holding that a city's stop work order that did not indicate specific code violations as required by local law was not a final land use decision); *Harrington v. Spokane County*, 128 Wn. App. 202, 212, 114 P.3d 1233 (2005) (holding that initial rejections of permit applications were not final appealable orders where county ultimately granted modified application for permit); *WCHS, Inc. v. City of Lynnwood*, 120 Wn. App. 668, 679, 86 P.3d 1169 (2004) (holding that a city letter denying a building permit, absent express language that the decision was final, constituted an interlocutory decision not subject to LUPA review); *Pac. Rock Envtl. Enhancement Group v. Clark County*, 92 Wn. App. 777, 781-82, 964 P.2d 1211 (1998) (holding that a prehearing discovery order was not subject to appeal under LUPA).

[8] Our Supreme Court has held that "even illegal decisions must be challenged in a timely, appropriate manner." *Habitat Watch*, 155 Wn.2d at 407 (citing *Pierce v. King County*, 62 Wn.2d 324, 334, 382 P.2d 628 (1963)). Thus, challenges brought after the expiration of deadlines for filing local administrative appeals or after LUPA's 21-day time period for filing an appeal constitute impermissible collateral attacks. *Habitat Watch*, 155 Wn.2d at 410-11; *see also Nykreim*, 146 Wn.2d at 933; *Wenatchee Sportsmen Ass'n v. Chelan County*, 141 Wn.2d 169, 181, 4 P.3d 123 (2000).

"[n]o additional issues remain[ ]." *Samuel's Furniture*, 147 Wn.2d at 453 (citing *Reif v. LaFollette*, 19 Wn.2d 366, 370, 142 P.2d 1015 (1943)). Because additional issues in the controversy herein remain to be decided and Stientjes may yet prevail, the BOCC's decision was not final. Accordingly, the superior court lacked authority to consider Stientjes' LUPA petition.

¶16 Reversed and remanded.

GROSSE and COX, JJ., concur.