# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |
|---|---|
| WANTHIDA CHANDRRUANGPHEN,<br><br>Appellant,<br><br>v.<br><br>CITY OF SAMMAMISH, a municipal corporation,<br><br>Respondent,<br><br>and<br><br>DANIEL BLOOM,<br><br>Intervenor Respondent. | DIVISION ONE<br><br>No. 85756-8-I<br><br>PUBLISHED OPINION |

DWYER, J. — Wanthida Chandrruangphen appeals from an order of the King County Superior Court dismissing her Land Use Petition Act[1] (LUPA) petition for failing to timely and properly accomplish service of process on the City of Sammamish (the City). Chandrruangphen contends that she effectuated personal service of process twice within the stringent LUPA deadline, once by causing process to be personally served upon the city clerk by "secondhand service," and once by serving the city manager within the allowable number of days of the date on which the City sent an e-mail notifying her of the final land use decision at issue. Because both instances constitute timely and proper

---

[1] Ch. 36.70C RCW.

service on the City, we agree.   Accordingly, we reverse and remand this matter for further proceedings.[2]

I

The real property at issue in this dispute is "Lot 2" of a King County short plat located in Sammamish, Washington.  The short plat contained a notation stating: "[t]here is no assurance that Lot#2 & Lot#3 may become building lots in the future.  In order for Lot#2 & Lot 3 to be considered as a building lot, a revised short plat must be approved and recorded which provides sufficient evidence to demonstrate a reasonable building site."  (Capitalization omitted.)

In August 2019, property owner Elizabeth Evans filed a short plat alteration application with the City seeking to remove the nonbuild status of the property.

In February 2021, Chandrruangphen acquired the property from Evans and succeeded her as the applicant under the application.

On July 6, 2021, the City notified Chandrruangphen by e-mail that, due to inactivity, the application would be cancelled.  Chandrruangphen appealed the City's decision to cancel the application to the city hearing examiner.  In August 2021, the city attorney informed Chandrruangphen that the application had been "revived" and was "under review."

In November 2022, the City issued its fifth review letter seeking expert reports and analysis and granted Chandrruangphen a courtesy extension of six

_____

[2] In addition, because we affirm the trial court's decision to allow Daniel Bloom to intervene such that he can seek to protect his property interest in the adjacent property, Bloom must be included in the resulting trial court proceedings on remand.

2

months to allow her adequate time to address all corrections and pursue all administrative remedies prior to resubmission of the application materials.

On May 8, 2023, the senior land use planner for the City issued, by way of e-mail, a letter of cancellation of the application. The document attached to the e-mail was dated May 3, 2023 and stated that the application was "cancelled for inactivity and failure to resubmit all the requested information." (Emphasis omitted.)

On May 24, 2023, Chandrruangphen filed a "Land Use Petition and Complaint for Damages" against the City in King County Superior Court. The same day, a process server delivered the summons and LUPA petition to Julian Bravo, an office assistant at the front desk of the Sammamish City Hall building. City clerk Lita Hachey, who was absent from the city clerk's office notwithstanding that the time of day was during normal business hours, was working from home that day, but learned that her presence at city hall was required to initial receipt of unspecified documents that had been left with Bravo. The city clerk then went to her office, initialed the documents, and noted that they included a LUPA petition and summons.

Two days later, May 26, 2023, Benita Lamp, paralegal for counsel representing Chandrruangphen, confirmed with Hachey that the City had received the LUPA petition and summons. Hachey informed Lamp that she had received the pleadings, signed off on them, and gave the documents to the City's hearing examiner's clerk. Lamp then notified counsel that Hachey had both confirmed receipt of the pleadings and "said process service was sufficient."

3

Hachey disputes that she informed Lamp that "process was sufficient," and avers that she neither stated nor considered "that the May 24, 2023, service attempt was valid and consistent with personal service as required by RCW 4.28.080(2)."

On June 1, 2023, a process server served the summons and LUPA petition on city manager Scott MacColl. MacColl confirmed receipt of the documents.

In July 2023, Daniel Bloom moved to intervene in the matter. He stated that he owns real property immediately adjacent to the property at issue and argued that a decision on the matter could significantly impact his interests and his property. Also in July, the City moved to dismiss Chandrruangphen's petition on two grounds. First, the City argued that cancellation of Chandrruangphen's short plat alteration application was an interlocutory decision and was not ripe for review pursuant to LUPA. Second, the City argued that Chandrruangphen had not properly and timely effectuated service of process. Soon after, Chandrruangphen filed a motion for an initial LUPA hearing and requested both that the court enter an order in her favor as to any jurisdictional and procedural objections and that the court set a schedule for the litigation.

On August 11, 2023, the trial court heard arguments on the motions from Bloom, the City, and Chandrruangphen. The trial court subsequently issued final orders granting both Bloom's motion to intervene and the City's motion to dismiss Chandrruangphen's petition.

As to the issue of Bloom's intervention, the trial court found that his request to intervene was timely and that "[t]he potential impact of proceedings

4

concerning the application is specific to his property," "[h]is interests are different and divergent [from] those of the City of Sammamish," "are also more particularized than that of the general public," and "are not adequately represented." Further, the court ruled, "insertion of [Bloom's] interests into the proceedings should not detract from Petitioner and the City of Sammamish's ability to control the lawsuit." Accordingly, the court granted Bloom's intervention as of right.[3]

As to the City's motion to dismiss, the trial court determined that the decision to cancel Chandrruangphen's application was a final land use decision subject to review pursuant to LUPA. However, the court further determined that it lacked authority to hear the case because Chandrruangphen did not comply with the strict service requirements of LUPA.

Chandrruangphen appeals.

II

As an initial matter, the City asserts that the trial court erred by concluding that the City's decision cancelling Chandrruangphen's application was not an interlocutory decision but was, instead, a final land use decision eligible for LUPA review. However, because the City's decision concerning the application effectively amounted to a rejection of the application, such that the only remedy is to submit a new application, the trial court did not err by concluding that the City's decision was a final land use decision and was, therefore, ripe for review.

---

[3] The trial court ruled, in the alternative, that permissive intervention was also an appropriate basis on which to grant Bloom's motion because his "intervention will not unduly delay or prejudice the adjudication of the rights of the original parties."

With certain exceptions not at issue here, LUPA provides the "exclusive means of judicial review of land use decisions." RCW 36.70C.030(1). LUPA defines a "land use decision," in pertinent part, as:

> a final determination by a local jurisdiction's body or officer with the highest level of authority to make the determination, including those with authority to hear appeals, on:
> (a) An application for a project permit or other governmental approval required by law before real property may be improved, developed, modified, sold, transferred, or used.

RCW 36.70C.020(2).

Our Supreme Court has explained that, "[a] 'final decision' is '[o]ne which leaves nothing open to further dispute and which sets at rest cause of action between parties.'" Samuel's Furniture, Inc. v. Dep't of Ecology, 147 Wn.2d 440, 452, 54 P.3d 1194 (2002) (second alteration in original) (quoting BLACK'S LAW DICTIONARY 567 (5th ed.1979)). Accordingly, for the purpose of LUPA review, "[a] land use decision is final when it leaves nothing open to further dispute and sets to rest the cause of action between the parties." Stientjes Fam. Tr. v. Thurston County, 152 Wn. App. 616, 618, 217 P.3d 379 (2009). In contrast, "an 'interlocutory' decision is one that is 'not final,' but is instead 'intervening between the commencement and the end of a suit which decides some point or matter, but is not a final decision of the whole controversy.'" Samuel's Furniture, 147 Wn.2d at 452 (quoting BLACK'S, supra, at 731).

According to the City, a local jurisdiction must reach the merits of the proposed land use in order for a decision to qualify as a final land use decision. The City relies on Stientjes, in which we stated that, "[w]hether a land use

6

decision is final turns on whether the governmental action at issue 'reaches the merits,' not on whether the wisdom of such action is 'potentially debatable.'" 152 Wn. App. at 624 (quoting Samuel's Furniture, 147 Wn.2d at 452). There, however, the land use decision at issue "did not settle the controversy between the parties," and "was akin to a court order denying a dispositive pretrial motion from which an appeal may not be taken." Stientjes, 152 Wn. App. at 623-24. Here, in contrast, the City's cancellation of Chandrruangphen's application ended its consideration of the matter such that any dispute was concluded and no issues remain outstanding. In fact, the City essentially acknowledges that its cancellation of the application terminated the existing controversy between the parties by asserting that Chandrruangphen's remedy is to submit a *new* application for the proposed short plat alteration. The City's decision set the application to rest. Accordingly, the cancellation was a final land use decision and LUPA review is appropriate.

III

Chandrruangphen asserts that the trial court erred by dismissing her LUPA petition on the basis that she had failed to properly accomplish service of process upon the City. In support of this contention, she avers that service upon the City was timely and proper on both May 24 and June 1. To address her twofold argument, we must first set out the legal requirements for proper and timely service in the context of LUPA.

7

A

To ensure timely review of land use decisions, "LUPA requires that a party file a petition for review with the superior court within 21 days of the date [that] a land use decision is issued." Vogel v. City of Richland, 161 Wn. App. 770, 776-77, 255 P.3d 805 (2011) (citing RCW 36.70C.040(3)). "The petition is timely if it is filed and served on all parties . . . within twenty-one days of the issuance of the land use decision." RCW 36.70C.040(3). As pertinent here, the date on which a land use decision is issued, for the purpose of LUPA, is "[t]hree days after a written decision is mailed by the local jurisdiction or, if not mailed, the date on which the local jurisdiction provides notice that a written decision is publicly available." RCW 36.70C.040(4)(a). Thus, when a final land use decision is issued by mail, a LUPA petition must be filed with the superior court and served on all parties within 24 days of the date of mailing. RCW 36.70C.040(3), (4)(a).

During the period for service established by LUPA, the petitioner must serve all parties. RCW 36.70C.040(2). Where, as here, the petition is brought against a local jurisdiction, "[s]ervice on the local jurisdiction must be by delivery of a copy of the petition to the office of a person identified by or pursuant to RCW 4.28.080 to receive service of process, or as otherwise designated by the local jurisdiction." RCW 36.70C.040(5). In an action against a town or incorporated city, process must be served on "the mayor, city manager, or, during normal office hours, to the mayor's or city manager's designated agent or the city clerk thereof." RCW 4.28.080(2).

LUPA requires strict compliance with its procedural requirements, including the bar against untimely or improperly served petitions. Durland v. San Juan County, 182 Wn.2d 55, 67, 340 P.3d 191 (2014). "A trial court may not hear a land use petition if it was not timely served upon certain persons designated by statute as necessary parties to the judicial review." Citizens to Preserve Pioneer Park LLC v. City of Mercer Island, 106 Wn. App. 461, 467, 24 P.3d 1079 (2001).

We review de novo whether service of process was properly accomplished. Scanlan v. Townsend, 181 Wn.2d 838, 847, 336 P.3d 1155 (2014). The plaintiff bears the initial burden to prove a prima facie case of sufficient service after which the party challenging service of process must demonstrate by clear, cogent, and convincing evidence that service was improper. Scanlan, 181 Wn.2d at 847.

B

We first consider whether Chandrruangphen timely effectuated service of the summons and petition on the city manager on June 1. Chandrruangphen asserts that for the purpose of calculating the period for service, the date of issuance of the land use decision at issue was three days after the City sent the May 8 e-mail with the attached cancellation letter. In response, the City avers that "[t]his argument is premised on the faulty assumption that e-mail and mail are indistinguishable, such that the three-day tolling period for postal mailings also applies to land use decisions sent via e-mail." Br. of Resp't at 43-44. We disagree that this premise is faulty.

9

In Confederated Tribes and Bands of Yakama Nation v. Yakima County, 195 Wn.2d 831, 466 P.3d 762 (2020), our Supreme Court held that the three-day tolling period is equally applicable to postal mailings and e-mail. There, the court addressed the timeliness of a petition challenging a written final decision in the form of a resolution sent by e-mail. Confederated Tribes, 195 Wn.2d at 834-35. The Confederated Tribes and Bands of Yakama Nation (Yakama) challenged a conditional use permit that allowed expansion of mining operations. Confederated Tribes, 195 Wn.2d at 834. Yakama pursued administrative remedies, appealing to the hearing officer, whose decision Yakama then appealed to the county board of commissioners. Confederated Tribes, 195 Wn.2d at 834. The county board of commissioners passed a resolution affirming the hearing officer's decision and denying Yakama's appeal. Confederated Tribes, 195 Wn.2d at 834. Notably, "[t]hree days later, a county planner *sent an e-mail and letter* to Yakama with the resolution attached." Confederated Tribes, 195 Wn.2d at 834 (emphasis added). According to the court, "[t]he county planner corresponded with Yakama through an e-mail containing a letter and the board's resolution. *There is no dispute that this e-mail correspondence satisfies the 'mailing' requirement of RCW 36.70C.040(4)(a).*" Confederated Tribes, 195 Wn.2d at 836 n.2 (emphasis added).

It was undisputed that Yakama filed a LUPA petition 22 days after the county board adopted the resolution and 19 days after the county planner's e-mail and letter. Confederated Tribes, 195 Wn.2d at 835. When asked to assess the timeliness of the petition, the Supreme Court stated as follows:

Here, the Board of Yakima County Commissioners met, voted, and reduced to writing its final land use decision at a public meeting on April 10, 2018. On April 13, 2018, a county project planner sent a letter to Yakama, as per its county code, transmitting the board's written decision—the resolution. YCC 16B.09.050(5) requires a final written decision, requiring transmission of that decision to Yakama, thereby triggering RCW 36.70C.040(4)(a). Under the plain language of RCW 36.70C.040(4)(a), LUPA's 21-day filing period began 3 days after this mailing. Therefore, we conclude that Yakama timely filed its LUPA petition in superior court 19 days after the written resolution was transmitted.

Confederated Tribes, 195 Wn.2d at 837-38. In reaching this conclusion, the Supreme Court applied RCW 36.70C.040(4)(a), which establishes the issuance date of a written decision *mailed* by the local jurisdiction, to determine the issuance date, and resulting timeliness, of a written decision *e-mailed* by the local jurisdiction. That was the same task as faced the superior court herein.

Our Supreme Court unanimously held that the Yakama petition was timely pursuant to RCW 36.70C.040(4)(a), concluding that "Yakama filed its petition in superior court within 19 days of the county's mailing and within the 21-day filing period." Confederated Tribes, 195 Wn.2d at 840. The court employed the term "mailing" throughout the opinion, making no distinction between mail and e-mail. As noted by the court, "[t]here is no dispute that this e-mail correspondence satisfies the 'mailing' requirement of RCW 36.70C.040(4)(a)." Confederated Tribes, 195 Wn.2d at 836 n.2. The message is clear: e-mail transmittal of a land use decision constitutes a mailing and, therefore, is governed by RCW 36.70C.040(4)(a). Thus, we hold that, for the purpose of obtaining LUPA review, a land use decision is "issued" three days after a written decision is e-mailed by the local jurisdiction.

11

Here, the City sent an e-mail with the cancellation decision on May 8, 2023.[4] Accordingly, the City's decision is deemed to have issued on May 11, 2023. For her petition to be timely, Chandrruangphen was required to accomplish service on the proper party by June 1, 2023. The City does not dispute that the city manager, who is an official designated to receive personal service by RCW 4.28.080(2), accepted service of the summons and petition on June 1, 2023, which is within 21 days of the May 11 issuance of the City's decision and, hence, within the time allowed to accomplish service of process. We conclude that service of process upon the city manager was timely and the trial court's dismissal of the petition was done in error.

C

Chandrruangphen also contends that the May 23 service was properly accomplished by way of "secondhand" personal service because the process server handed the documents to Bravo who then provided the same documents to the city clerk at her office during normal business hours. We agree that the process server set into motion the events which caused the documents to be served upon Hachey on May 23, 2023, thus satisfying personal service requirements within the LUPA time limits.[5]

---

[4] While the letter was dated May 3, 2023, the parties do not dispute that it was e-mailed to Chandrruangphen's attorney on May 8, 2023.

[5] We note that Chandrruangphen's argument as to "secondhand" service is far more robust in the appellate briefing than was the briefing before the superior court. However, given our resolution of the issue addressed in Section III.B. supra, we choose to reach this issue given that our consideration of it will be of benefit to both the bench and the bar. There would be little utility in exploring the question of issue preservation in this circumstance.

Our Supreme Court approved of the validity of what has come to be referenced as "secondhand" service of process in Scanlan, 181 Wn.2d 838. In Scanlan, a process server delivered a copy of a summons and complaint to defendant Townsend's father at his home, although the defendant, his daughter, had not lived there for several years. 181 Wn.2d at 842. The father later personally delivered the summons and complaint to Townsend. Scanlan, 181 Wn.2d at 844. The court determined that Townsend's father properly served her with the summons and complaint: "Townsend's father was competent to serve Townsend. He delivered a copy of the summons and complaint personally to Townsend within the statute of limitations. Townsend's deposition testimony and her attorney's stipulation demonstrated proof of service in compliance with CR 4(g)(5) and (7)." Scanlan, 181 Wn.2d at 856.

Our courts have acknowledged that CR 4(c)[6] does not require "that a process server have a contractual obligation to serve process. Nor is there any requirement of proof of intent to serve process." Brown-Edwards v. Powell, 144 Wn. App. 109, 111, 182 P.3d 441 (2008) (citation omitted). Accordingly, "nothing . . . would prohibit a person who comes into possession of a summons and complaint by defective service from being a competent process server." Brown-Edwards, 144 Wn. App. at 111. Thus, someone may, "even unwittingly," accomplish service of process through secondhand delivery if that person meets the minimum requirements to serve process established by CR 4(c). In re

---

[6] "Service of summons and process . . . shall be by the sheriff of the county wherein the service is made, or by the sheriffs deputy, or by any person over 18 years of age who is competent to be a witness in the action, other than a party." CR 4(c).

Dependency of G.M.W., 24 Wn. App. 2d 96, 120, 519 P.3d 272 (2022), review denied, 1 Wn.3d 1005 (2023).

Here, Bravo was the unwitting process server. To commence LUPA review, Chandrruangphen was required to serve "the mayor, city manager, or, during normal office hours, to the mayor's or city manager's designated agent or the city clerk thereof." RCW 4.28.080(2). However, Hachey, the city clerk, was working from home and, therefore, was not present in the city clerk's office during the City's official normal office hours. She was thus not available to receive service as provided for in RCW 4.28.080(2).[7] Due to the city clerk's unavailability during normal business hours, the process server gave the documents to Bravo whose declaration confirms that he is over the age of 18, not a party to the action, and competent to be a witness, thereby satisfying the requirements to serve process pursuant to CR 4(c). Although Bravo was not authorized to receive service on behalf of the City, he met the qualifications to serve process.

Hachey was then alerted of the need to report to her office in city hall to receive and initial the documents at issue. She then travelled to city hall and took possession and control of the documents. She handled them, initialed them, and reviewed them. Bravo's service of the documents on Hachey was complete. It is clear that Bravo's role was to receive documents, he did so, and he caused the documents to be within the personal control of the city clerk at her official work station. Hachey confirmed that these steps had been completed

---

[7]That the city clerk effectively "set up shop" at home was at plain variance with the expectation of the legislature in enacting RCW 4.28.080(2).

well within the strict service period ending on June 1, 2023. Thus, Chandrruangphen caused the summons and petition to be timely served upon the city clerk to properly secure review pursuant to LUPA.

Accordingly, for both of the foregoing reasons, by dismissing Chandrruangphen's petition on the basis that she had failed to timely accomplish service of process upon the City, the trial court erred.

IV

Finally, Chandrruangphen asserts that the trial court erred by granting Bloom's motion for intervention of right because Bloom failed to demonstrate that he has an adequate interest in the subject matter at issue and that any interest is not adequately represented as required to intervene. We disagree, as Chandrruangphen has asked the court to resolve substantive issues that would impact Bloom's property such that he has individual concerns beyond those of the City or general public.

A trial court's decision to allow intervention is discretionary, therefore we review that decision for abuse of discretion. In re Recall Charges Against Seattle Sch. Dist. No. 1 Dirs., 162 Wn.2d 501, 507, 173 P.3d 265 (2007).

As pertinent here, intervention in an action is allowed as of right when, upon timely application,

> the applicant claims an interest relating to the property or transaction which is the subject of the action and the person is so situated that the disposition of the action may as a practical matter impair or impede the person's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

15

CR 24(a)(2). Accordingly, the rule imposes four requirements for intervention of right: (1) timely application, (2) an interest which is the subject of the action, (3) the disposition will impair or impede the applicant's ability to protect the interest, and (4) the applicant's interest is not adequately represented by the existing parties. Westerman v. Cary, 125 Wn.2d 277, 303, 892 P.2d 1067 (1994). Once a divergent interest is shown, the burden of making a showing that the interest may be inadequately represented by the existing parties "should be treated as minimal." Fritz v. Gorton, 8 Wn. App. 658, 661-62, 509 P.2d 83 (1973).

The trial court determined that Bloom met the requirements to intervene. With respect to Bloom's interest, the trial court found that "[t]he application at issue concerns development immediately adjacent to Mr. Bloom's property and protections afforded specifically to the wetland on Mr. Bloom's property. The potential impact of proceedings concerning the application is specific to his property."

Chandrruangphen, for her part, disagrees with the court's characterization of her application, asserting that her case concerns only the procedural propriety of the City's decision to cancel her application, and, as such, is a question of process rather than land use policy applicable to her property.

However, Chandrruangphen's LUPA petition filed with the trial court belies her assertion. Rather than merely request that the trial court consider the procedure that led to cancellation of the application, Chandrruangphen's superior court petition alleged erroneous interpretations of law as to several of the City's decisions regarding Bloom's wetland property. For example, the allegation that

16

the City's decision "is an erroneous interpretation of the law because it does not abide by the definition of 'wetlands' set forth in SMC 25.09.012(C) and/or Washington Administrative Code ("WAC") 197-11-756(2)," requires the court to consider the statutory definition and assess the City's application of the law to the facts of this case. This is a substantive consideration. Bloom, as the owner of the wetland property, has an interest in substantive considerations that impact his property.

Moreover, Bloom's interests may not be adequately represented by the City. Our courts have recognized that, while the goals of land owners and local government may be aligned, "their interests were not the same: 'the county must consider the interests of all the residents of the county,' whereas 'the affected property owners represent a more sharply focused and sometimes antagonistic viewpoint.'" Pub. Util. Dist. No. 1 of Okanogan County v. State, 182 Wn.2d 519, 533, 342 P.3d 308 (2015). Bloom has identified concerns related to the protection of his property interests beyond those of the City or general public and, therefore, satisfies the minimal burden required to intervene. As such, the trial court did not abuse its discretion by granting Bloom's motion to intervene.

Reversed in part and remanded for further proceedings consistent with this opinion.[8]

Duyn, J.

WE CONCUR:

Birk, J.    Mann, J.

---

[8] Because we have decided this matter in Chandrruangphen's favor on the grounds discussed above, we need not address her additional arguments.